## Case No. 13,864.

### THATCHER HEATING CO. v. CARBON STOVE CO.

[4 Ban. & A. 68; 15 O. G. 1,051; 2 N. J. Law J. 25; 7 Reporter, 199; Merw. Pat. Inv. 201.] [1]

Circuit Court, D. New Jersey. Dec. 7, 1878.

PATENTS—PLEADING—INFRINGEMENT—AIR HEATING FURNACE.

1. It is not necessary to state, in a bill of complaint for the infringement of a patent, the particular claims infringed by the defendant.

2. A statement of the complainant's patent, and a general allegation that the defendant has infringed, is sufficient to put the defendant upon his answer, and at the final hearing the complainant may specify the claims of the patent, on which he will ask for a decree.

3. The second and third claims of letters patent No. 71,244, granted to John M. Thatcher, November 19th, 1867, for an "Air-Heating Furnace," namely: "(2) The clinker-cleaning passage from and through the furnace front to and into the fire-pot, enclosed by the plate connected with the fire-pot, furnace front, and ash-pit, so as to prevent communication with the hot air chamber surrounding the fire-pot, substantially as described," and "(3) in combination with the clinker-cleaning passage, the downward pas-

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission. 7 Reporter, 199, and Merw. Pat. Inv. 201, contain only a partial report.]

sage leading therefrom to the ash-pit, substantially as described": *Held*, valid.

In equity.

B. F. Lee and F. C. Bowman, for complainant.

Charles B. Collier and F. Kingman, for defendant.

NIXON, District Judge. This is a suit in equity, brought by the complainant against the defendant, for the infringement of letters patent No. 71,244, dated November 19, 1867, for improvement in air-heating furnaces, and assigned to the complainant corporation. The complainant's patent contains nine claims, and it was conceded by counsel at the opening of his case that the only subjects of controversy were the infringement of the second and third claims.

The counsel for the defendant called the attention of the court to the fact, (1) that the only allegation of the bill of complaint was that the defendant company, having full knowledge of the premises, and in violation of the exclusive right and privilege of the complainant, had, since the assignment of the said letters patent, and without its license, "erected, used and sold, and still continued to erect, use and sell many air-heating apparatus embracing the invention described in said letters patent, and so secured" to the complainant corporation; and (2), that the defendant, in the answer, prayed the same benefit of the facts and things thereinbefore set forth, as if, for the reason thereof, the said bill had been demurred to, and submitted, as a matter of equity practice, that a suit could not be maintained when the bill alleged a violation of the invention generally, and the proofs were that only two claims thereof had been infringed.

It was insisted that, unless the whole invention, as claimed, had been infringed, it was necessary for the complainant to specify in the bill the particular claims, of the violation of which he complained.

Perhaps that would have been the correct practice to have been established in suits for the infringement of patent rights in analogy of what is required in courts of equity in actions for relief against fraud. In such cases it is not permitted to allege fraud generally. The party alleging it must state the facts which constitute the fraud. Small v. Boudinot, 9 N. J. Eq. 391; Rorback v. Dorsheimer, 25 N. J. Eq. 516. But such is not the recognized practice in patent cases. A statement of the complainant's patent, and a general allegation that the defendant has infringed, is deemed sufficient to put the defendant upon his answer. Turrell v. Cammerrer [Case No. 14,266].

The question there arose upon a demurrer to a bill of complaint drawn substantially like the bill in the present case. In concluding his opinion overruling the demurrer, the learned judge says: "I am clearly of opinion that the general charge of infringement is all that is necessary to require the defendant to answer the bill, and that particulars of infringement need not be specified."

When the proofs are closed, and at the final hearing, the complainant is permitted to specify the claims of the patent on which he will ask for a decree.

The only other questions raised by the pleadings, which were discussed at the hearing, were: (1) Whether the complainant has proved the infringement. (2) Whether the complainant's patent was not void for want of novelty.

1. With regard to the infringement, no serious attempt appears to have been made to deny it. A pamphlet was produced, marked "Complt's. Ex. D.," and was identified by the president of the defendant company as a publication issued by them, in which several kinds of heaters are described; and the president testified that they had sold one or more of such heaters since the 4th of May, 1868, and before the 26th of November, 1875.

From the certificates and testimonials printed from the fourteenth page to the end of said pamphlet, it would seem that the "carbon reverberatory heater" was the one most earnestly pushed by the defendant, and the one most generally in favor with the public, and the testimony is quite clear that said heater embraced some of the devices claimed in the Thatcher patent. Besides this, the evidence of Mr. Roberts, the president, substantially admits the infringement. He says that, at his request, the secretary of the company furnished one or more statements of the number and description of furnaces manufactured by the Carbon Stove Company, which embraced the devices defined in claim 3 of the complainant's patent. He further states that he attempted to justify the use of these devices by purchasing the right to a patent, including those which had been granted to a Mr. Hillson in 1870, and that he afterward ascertained that the Hillson patent was younger than the complainant's; and that his subsequent negotiations for the payment of a royalty, for his infringement of the third claim, came to an end because the complainant insisted that the "covered clinker-way," as used by the defendant, was equally an infringement of claim No. 2. No inquiry was made as to the extent of the infringement, because that fact was of no importance until an accounting was ordered.

2. The principal controversy is in regard to the novelty of the second and third claims of the complainant's patent. The patentee's description of the invention, so far as it relates to these claims, is as follows: "My invention also consists in the combination and arrangement of a passage-way, from and through the furnace front, to and into the fire-pot, at the bottom thereof, the passage-way being of sufficient width and height to admit of the introduction of a slicer or poker, for the purpose of slicing the fire and remov-

ing the clinker from the grate bars forward, the bottom of the passage-way being on a line with the top surface of the grate bars, and the top and sides of the passage-way formed by an inclosing plate extending from the fire-pot to the furnace-front, and joining at the sides the ash-pit box, so as to prevent any communication between said passage-way leading from the said furnace-front into the fire-pot, and the hot-air chamber surrounding the fire-pot; and this part of my invention further consists in combining, with said inclosed passage from the furnace-front to the fire-pot, a downward opening between the furnace-front and fire-pot, leading from said inclosed passage to the ash-pit, whereby clinkers and other matter removed from the fire-pot may fall into the ash-pit."

The claims are as follows: "(2) The clinker-cleaning passage from and through the furnace-front to and into the fire-pot, inclosed by the plate connected with the fire-pot, furnace-front, and ash-pit, so as to prevent communication with the hot-air chamber surrounding the fire-pot, substantially as described." "(3) In combination with the clinker-cleaning passage, the downward passage leading therefrom to the ash-pit, substantially as described." These claims are prima facie good. The legal presumption is in favor of the novelty of the devices patented, and the burden of rebutting the presumption is upon the defendant.

What has been shown to establish the fact, with any reasonable degree of certainty, that the apparatus or combinations claimed by the complainant are not new? The testimony is within a narrow compass. No actual structures have been produced which were made before the date of the Thatcher patent; but certain representations of things are exhibited which the witnesses say are the same in appearance or in principle as what they saw or knew or heard of years ago. Such evidence, however honest. is of little practical weight. It requires something more accurate than the average human memory, to carry in the recollection, through a long series of years, those little resemblances or differences in construction or arrangement which distinguish things, and which are necessary to be recalled, in order to make the testimony of any value.

The "McIlvaine heater" is set up as an anticipation of the second claim. The defendant offers much testimony to prove that twenty years ago the country generally, and the city of Philadelphia in particular, were full of such air-heaters, but fails to produce an actual structure embodying the devices, of older date than the patent. The president of the defendant company, on his examination, stated that he had one in his house at Burlington, New Jersey, and kindly consented that the complainant or its experts should be allowed to inspect it; but when he went for that purpose it had disappeared, and the witness was told that it had been broken up and melted. Reference was also made to an old heater in the possession of Cox, Wightman & Cox, of Philadelphia; but when it was examined, and the proportions accurately taken, it was found that the passage-way into the fire-pot and grate was too small for a clinker-cleaning passage-way. The counsel for the defendant insists that mere form or proportion is not material, and that there is no invention in simply enlarging the covered aperture. That would be true if no new and useful result was accomplished by the enlargement; but when a change of form produces a new and beneficial result, such change may be patentable. Curt. Pat. § 44.

The letters patent to J. P. Hayes, No. 20,-640, and dated June 22d, 1858 (Deft.'s Exhibit No. 4), were also offered in connection with defendant's Exhibit No. 3, as anticipating the second and third claims of the complainant's patent.

There is nothing in the claims of the Hayes patent which indicates that the inventor had in his mind the clinker-cleaning passage-way, or the combination of such passage-way with a downwardly-leading passage toward and into the ash-pit. But the patentee, in his testimony, states that, in his application for the patent, he made claim for "four or five new principles, and one of these principles was precisely or substantially as that in the complainant's heater; that the patent office decided that this principle was the subject of a patent in itself, and that he would be required to make a new application for this or the other principles; that he decided to receive the patent for the other principles, designing to make another application for this principle." No such application, however, was made; but he got up a heater, and put it in practical use in 1858, with this principle attached, and he shows the model (Exhibit No. 3) to illustrate it. Comparing this exhibit with the two claims of the Thatcher patent under consideration, its distinguishing feature, as the specifications inform us, is the grates in two parts, made to slide back and forth on a plate which supports them, so that a space or opening can be formed both behind and between the grates by drawing them partially forward, as occasion may require, for removing large stones, slate, or cinders without letting fall the whole mass of burning fuel. He further says that, when the fire needs raking, a poker is introduced through the grate-opening I "for the purpose, and also in like manner for the purpose of separating or otherwise producing a sufficient opening between and at the rear of the grates, to let down the cinders, slate or stones that may at any time be found in the fire." These methods differ from the complainant's claims. There is no suggestion of a covered passage-way of sufficient dimensions to allow of clinker-cleaning by slicing the fire with a poker, nor, in combination with this, a downward passage in front of the grate to the ash-pit below; and defendant's Exhibit 3 is so constructed as to negative the idea

that the inventor had in his mind the Thatcher devices. The hole designed for raking the fire with a poker is so arranged, in reference to other and contiguous parts of the heater, that it cannot be used as a clinker-cleaning passage. The bars of the grate turned up at the ends prevent such use.

There must be a decree in favor of the complainant for profits and damages and costs, according to the prayer of the bill.

[For another case involving this patent, see Thatcher Heating Co. v. Spear, 1 Fed. 411.]